UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENERAL MOTORS COMPANY,

        Plaintiff,                          Case Number 09-14445
                                                            Honorable David M. Lawson
v.

EUGENE DINATALE,

        Defendant.
_____/

## CORRECTED OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE

As part of its benefits plan, plaintiff General Motors Company (GM) maintains a program that grants vehicle purchase discounts to its employees, retirees, and their families who buy a new GM vehicle. Defendant Eugene DiNatale is a GM retiree residing in Maryland who, GM alleges, availed himself of that program several times between 2003 and 2007 to obtain vehicle discounts for twenty-two unspecified people. When DiNatale failed to respond to an audit and verify that these twenty-two individuals qualified for the discount as his family members, GM brought the present action in a Michigan circuit court alleging fraud, conversion, and breach of contract claiming damages totaling $115,593.92. DiNatale removed the case to this Court, invoking diversity jurisdiction and filed a motion to dismiss for lack of personal jurisdiction or transfer venue to the District of Maryland. In response, GM amended its complaint to limit its claim for damages to no more than $75,000, and then moved to remand to state court claiming lack of subject matter jurisdiction. The Court heard oral argument on all motions on March 4, 2010 and now finds that they lack merit. Therefore, the motions will be denied.

## I. Facts

General Motors Company, headquartered in this District, brought an action alleging that defendant DiNatale abused the employee vehicle discount program. It bases its claim, presumably, on the facts that DiNatale obtained discounts of a large number of vehicles and refused to respond to an audit request for verification that the purchases were qualifying individuals under GM's plan. GM filed its lawsuit on October 16, 2009 in the Wayne County, Michigan circuit court.

Eugene DiNatale resides in Baltimore, Maryland. He apparently does not dispute that he was involved in the vehicle transactions, but he avers in an affidavit that the dealerships involved in the subject sales are located in Maryland; he has not been to Michigan in over thirty years; he always worked for GM in Maryland; he has never purchased an automobile in Michigan; no one has used his Program discount to purchase an automobile in Michigan; he has no knowledge of contracting with anyone in Michigan over the Program details; he has never contacted anyone in Michigan regarding the Program at all; and his participation in this lawsuit, if held in Michigan, will require over five hundred miles of travel. DiNatale removed the case to this Court on November 13, 2009 on the ground of diversity of citizenship.

GM apparently desires to be back in state court and is willing to forego some of its claimed damages for the privilege. On December 3, 2009, it filed an amended complaint alleging that its damages are $75,000. In an affidavit filed by its attorney, the plaintiff states that it took another look at the twenty-two vehicle transactions and now believes that the loss does not add up to as much as it originally claimed. On the basis of the amended complaint, GM contends that the amount-in-controversy jurisdictional requirement is lacking, so the case must be remanded.

As for the vehicle program itself, GM states that the program guidelines establish that a request for a discount must be initiated by the employee — or, in this case, the retiree. The retiree's request is directed to the discount center located in Michigan, where the transaction records are maintained. The request triggers the issuance of an authorization number to the retiree, who in turn gives it to the dealer, and the transaction is completed at the dealership. GM's program supervisor avers that DiNatale initiated a request for an authorization number on twenty-two separate occasions between 2003 and 2007.

DiNatale insists, however, that he has no contact with Michigan whatsoever, and it would be unfair to make him litigate the case here. He contends that the Court has no personal jurisdiction over him, but if it does, he believes that venue should be transferred to his home district.

## II. Motion to Remand

The federal district courts are courts of "limited jurisdiction," and the burden of establishing jurisdiction rests with the defendant, as the party removing the case and asserting federal jurisdiction. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "'[A]ll doubts as to the propriety of removal are resolved in favor of remand.'" *Jacada (Europe), Ltd. v. Int'l Mktg. Strategies, Inc.*, 401 F.3d 701, 704 (6th Cir. 2005) (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)), *abrogated on other grounds by Hall St. Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008). A defendant seeking to remove a case to federal court on the ground of diversity of citizenship under 28 U.S.C. § 1332 must establish that the amount in controversy is over $75,000, exclusive of interest and costs, and the parties are citizens of different states or citizens of a state and citizens or subjects of a foreign state. 28 U.S.C. § 1332.

When determining the amount in controversy, the general rule is that "the sum claimed by the plaintiff controls." *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) (quoting *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 156 (6th Cir. 1993)). However, "where plaintiffs seek 'to recover some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement,' the defendant satisfies its burden when it proves that the amount in controversy 'more likely than not' exceeds $75,000." *Ibid.* (quoting *Gafford*, 997 F.2d at 158). Under Michigan law, a plaintiff is not limited to the award claimed in its complaint; the state's procedural rules permit a plaintiff purposely to plead an amount expressly less than $75,000, but set forth allegations in the complaint that would entitle the successful plaintiff to an amount significantly in excess of the federal diversity jurisdictional threshold. *See* Mich. Ct. R. 2.601(A); Mich. Comp. Laws § 445.911(2); *see also Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000)). As a result, courts allow the removing defendant to allege specific facts and provide "competent proof" to show that the amount in controversy will exceed the amount claimed in the complaint. *See, e.g.*, *Leys v. Lowe's Home Centers, Inc.*, 601 F. Supp. 2d 908, 918-19 (W.D. Mich. 2009) (citations omitted).

Federal courts "look to the complaint at the time of removal, . . . and determine whether the action was properly removed in the first place." *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996) (internal citations omitted). Therefore, the propriety of removal, including a determination of whether the amount in controversy has been met, is evaluated at the time of removal. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007) (stating that "[j]urisdiction is determined at the time of removal") (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938)); *see also Everett*, 460 F.3d at 822. "'[A] post-removal

stipulation has no effect on federal jurisdiction over the original complaint.'" *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 872 (6th Cir. 2000) (quoting *Mitchell v. White Castle Sys., Inc.*, No. 94-1193, 1996 WL 279863, *2 n.2 (6th Cir. May 24, 1996) (unpublished)). Similarly, a post-removal amended complaint that reduces the amount of damages claimed will not change the assessment of jurisdiction established on the basis of the original pleading. "[E]vents occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached." *St. Paul Mercury Indem. Co.*, 303 U.S. at 293.

General Motors Company's principal place of business is in Michigan, and it is therefore a citizen of this state. *See Heinz Corp. v. Friend*, --- U.S. ---, 130 S. Ct. 1181, 1192 (2010) (holding that a corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities"). DiNatale unquestionably is a citizen of Maryland. GM pleaded in its complaint an amount in controversy exceeding $75,000. Jurisdiction is established.

Citing *Eastman v. Marine Mech. Corp.*, 438 F.3d 544 (6th Cir. 2006), GM argues that the Court has the discretion to remand the case based on its newly-claimed damage amount. The plaintiff misreads the holding of that case, however. *Eastman* applies strictly to supplemental jurisdiction and actually holds that "if an amendment eliminates all federal claims, remand becomes a discretionary decision for the district court under 28 U.S.C. § 1367(c)." 438 F.3d at 551 (internal citations omitted). However, a court may not dismiss or remand state law claims when diversity jurisdiction is the basis of the Court's authority over the action. *See Foster v. Fed. Exp. Corp.*, No. 04-10325, 2005 WL 3369484, at *2 (E.D. Mich. Dec. 12, 2005) (citing *Colo. River Water*

*Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (observing that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them")).

The motion to remand, therefore, must be denied.

### III. Motion to Dismiss or Transfer Venue

#### A.

DiNatale argues that this Court cannot exercise personal jurisdiction over him because his conduct does not bring him within Michigan's long arm statute, and he has not had sufficient contacts with this forum to satisfy the requirements of the Due Process Clause. He seeks dismissal, or in the alternative he insists that the case must be transferred to the United States District Court for the District of Maryland.

"The question of personal jurisdiction, which goes to the court's power to exercise control over the parties, is typically decided in advance of venue, which is primarily a matter of choosing a convenient forum." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979). In a motion to dismiss for want of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of proving the court's jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). However,

> [w]here, as here, the district court relies solely on written submissions and affidavits to resolve a Rule 12(b)(2) motion, rather than resolving the motion after either an evidentiary hearing or limited discovery, the burden on the plaintiff is "relatively slight," *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988), and "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal," *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir.

> 1991). In that instance, the pleadings and affidavits submitted must be viewed in a light most favorable to the plaintiff, and the district court should not weigh "the controverting assertions of the party seeking dismissal." *Id.* at 1459.

*Air Prods. & Controls, Inc. v. Safetech Int'l., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). A plaintiff "can meet this burden by 'establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction.'" *Neogen*, 282 F.3d at 887 (internal citations omitted).

"In a diversity case, personal jurisdiction must be appropriate both under the law of the state in which the district court sits and the Due Process Clause of the Fourteenth Amendment." *Bagsby v. Gehres*, 195 F. Supp. 2d 957, 961 (E.D. Mich. 2002) (citing *Neogen Corp.*, 282 F.3d at 887-88). The Sixth Circuit has explained that "[w]here the state long-arm statute extends to the limits of the due process clause, the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003) (per curiam) (internal citations omitted). In Michigan, jurisdiction may be asserted over an individual on the basis of general personal jurisdiction, *see* Mich. Comp. Laws § 600.701, or limited personal jurisdiction, *see* Mich. Comp. Laws § 600.705. General personal jurisdiction invests the Court with authority to pass judgment on a defendant regardless of where the facts giving rise to the cause of action occurred. The plaintiff does not argue that the defendant's contacts with Michigan are sufficient to establish general personal jurisdiction over him.

Limited personal jurisdiction may be exercised over a defendant who has certain minimum contacts with the forum, but only over claims that arise from or relate to those contacts. *Theunissen*,

935 F.2d at 1459-61. Limited personal jurisdiction may be exercised over an individual if he has one of the following relationships with the state:

> (1) The transaction of any business within the state.
> (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of real or tangible personal property situated within the state.
> (4) Contracting to insure a person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.
> (6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.
> (7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

Mich. Comp. Laws § 600.705. A single contact with the forum state may suffice for personal jurisdiction if it is directly and substantially related to the plaintiff's claim. *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998). In addition, the Sixth Circuit has explained that the "transaction of any business" clause is quite broad:

> [T]he Michigan Supreme Court stated that "[t]he word 'any' means just what it says. It includes 'each' and 'every.' . . . It comprehends the 'slightest.'" *Lanier v. Am. Board of Endodontics*, 843 F.2d 901, 905-06 (6th Cir. [1988]) (quoting [*Sifers v. Horen*, 385 Mich. 195, 199 n.2, 188 N.W.2d 623, 624 n.2 (1971))]. This construction applies with equal force to section 705. *Hertzberg & Noveck v. Spoon*, 681 F.2d 474, 478 (6th Cir. 1982).

*Theunissen*, 935 F.2d at 1463-64. A transaction of business includes "contact with Michigan customers through the mail and the wires." *Neogen*, 282 F.3d at 892 (citing *Sifers v. Horen*, 385 Mich. 195, 188 N.W.2d 623 (1971)).

Even if the plaintiff has satisfied the demands of a statutory grant of jurisdiction, the statute is circumscribed by the Due Process Clause. "[T]his Circuit historically has understood Michigan

to intend its long-arm statute to extend to the boundaries of the fourteenth amendment." *Theunissen*, 935 F.2d at 1462. Therefore, jurisdiction over a non-resident defendant is consistent with due process only if the "facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen*, 935 F.2d at 1459 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945)).

Limited personal jurisdiction for a specific case may be consistent with the due process clause. The Sixth Circuit has identified three considerations to determine whether limited personal jurisdiction extends to the defendant in a particular case:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Theunissen*, 935 F.2d at 1460 (internal quotations omitted); *see also Neogen Corp.*, 282 F.3d at 890 (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

The Sixth Circuit "views the purposeful availment prong of the *Southern Machine* test as 'essential' to a finding of personal jurisdiction." *Intera Corp. v. Henderson*, 428 F.3d 605, 616 (6th Cir. 2005) (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000)). "Purposeful availment" occurs when "the defendant's contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum State." *Neogen Corp.*, 282 F.3d at 889 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a

third person.'" *Ibid.* (quoting *Burger King*, 471 U.S. at 475). In that respect, the Sixth Circuit "has found that contacts lack quality when they are initiated by the plaintiff rather than the defendant, in part because '[t]he unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum.'" *Air Products*, 503 F.3d at 552 (quoting *LAK, Inc. v. Deer Creek Enters.*, 855 F.2d 1293, 1301 (6th Cir. 1989) and *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). On the other hand, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. 462, 473 (1985) (internal quotation omitted).

The mere act of entering into a contract with a party in a state is insufficient to establish purposeful availment. *Burger King*, 471 U.S. at 478. The law is clear that the act of an out-of-state entity contracting with an in-state entity, and undertaking communication related to that contract, does not constitute purposeful availment of the forum state for an action based on the breach of that contract. Instead, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479. In *Air Products*, for example, the court found purposeful availment based on a nine-year continuous business relationship, where the defendant "reached out" to conduct business with a company it knew had its principal place of business in Michigan. *Air Products*, 503 F.3d at 551. However, the amount of contacts need not rise to this level to satisfy the Due Process Clause. "The acts of making phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action."

*Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001). In *Neal*, for example, the court determined that sending fraudulent communications to a forum state *did* constitute purposeful availment sufficient for the exercise of personal jurisdiction. *Ibid.* Ultimately, though, "[i]t is the quality of the contacts, not the quantity, that determines whether they constitute 'purposeful availment.'" *Ibid.* (citing *LAK*, 885 F.2d at 1301). For again, "telephone calls and letters on which the plaintiff's claim of jurisdiction primarily depends [can also] strike . . . as precisely the sort of 'random,' 'fortuitous' and 'attenuated' contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdictions." *LAK*, 885 F.2d at 1301.

A debtor-creditor relationship, standing alone "likely would not satisfy the purposeful availment prong," unless the "claims asserted . . . are also based on actions that arguably were directed at the resident of the forum state." *Air Products*, 503 F.3d at 553 n.2. This suggests that without purposeful direction at the resident – even if the course of dealing arises out of the resident coming across information about the defendant and reaching out to it initially – a court may not have personal jurisdiction over the defendant. For example, in *Intternational Technologies Consultants, Inc. v. Euroglas S.A.*, the Sixth Circuit found the foreign defendant's contacts with Michigan to be "purely fortuitous" because the defendant "was not attempting to exploit any market for its products in Michigan" and had contact with the state only because the plaintiff "happened to have a Michigan address." 107 F.3d 386, 395 (6th Cir. 1997). Because employees of the defendant only "episodically" visited Michigan and because the case involved an issue of contract interpretation involving a European contract, the *Euroglas* court determined that it did not have personal jurisdiction over the foreign defendant and instead that venue was proper in the foreign jurisdiction. *See id.* at 393-94.

DiNatale takes the position in this case that his relationship with GM is solely as a purchaser of GM's vehicles sold in Maryland by GM's dealer agents. He attempts to portray himself as a mere consumer who confined his activities strictly to Maryland, and he characterizes his contact with Michigan via electronic means as purely fortuitous, since GM happens to be located here. That argument might prevail if DiNatale simply responded to a national GM advertisement and purchased a GM vehicle at a local dealership, which itself arranged the pricing discount. However, the affidavits on file, including DiNatale's own affidavits, show much more.

DiNatale's contacts with GM in Michigan were numerous, regular, and self-initiated. He formerly worked for GM and obviously knew it was headquartered in Michigan. According to his own declaration, DiNatale "had an access number to General Motors Company by way of the internet," which he repeatedly used to access his general retiree benefits information. Suppl. aff. of DiNatale [dkt. #22] ¶ 11. When DiNatale encountered difficulties obtaining access, he telephoned a fully automated answering system at GM for help. *Id.* at ¶ 5. DiNatale disputes, however, that he specifically "[]ever access[ed] the General Motors Vehicle Purchase Program through the internet," *id.* at ¶ 11, and maintains that he had no knowledge he was ever "communicating with any person or thing located in Michigan," *id.* at ¶ 8. But the record contains facts that undermine these claims. For instance, for DiNatale to obtain a retiree vehicle discount, he had to obtain an authorization code issued directly by GM. Suppl. aff. of Stouffer [dkt. # 21] ¶ 5, 13; *cf.* Suppl. aff. of DiNatale [dkt. # 22] at ¶ 13. Linda Stouffer, the discount program manager, stated in her affidavit that DiNatale's "file and the history of his account reveals that Mr. Dinatale [*sic*] accessed the system in 3 different ways using the automated phone system, the phone system where he actually spoke with an agent and the internet/web in order to obtain these discounts." Suppl. aff. of Stouffer ¶ 6. Stouffer states

that DiNatale "repeatedly contacted GM on many instances and re-set his password for his internet account or sought other support assistance. . . . On each of these occasions — in excess of 10, the agent dealing with Mr. DiNatale verified it was him to whom they were speaking." *Id.* at ¶¶ 9, 11. DiNatale's conduct, therefore, supports a claim by GM that he reached into and conducted business in Michigan relevant to this case.

Although GM "happens to be located" in Michigan, that circumstance does not justify characterizing DiNatale's alleged contacts with Michigan as fortuitous. According to the complaint and the plaintiff's affidavits, on twenty-two occasions DiNatale chose to contact GM in Michigan to obtain vehicle discounts. The discounts were each issued only after DiNatale initiated contact and provided GM his date of birth, zip code, and telephone number. Suppl. aff. of DiNatale [dkt. # 22] ¶ 13. DiNatale argues that anyone knowing his personal information could access the Vehicle Purchase Program for a discount, suggesting perhaps that someone else made the relevant contacts or that he might not even have been involved in the purchases. *Ibid.* However, DiNatale maintained the above-mentioned web account specifically so *he* could procure discounts as part of his retirement benefits. Additionally, DiNatale's "file and the history of his account" show that some of the discounts were processed and confirmed through a live agent, and all the Internet-obtained discounts were confirmed by email and written notice, where his personal identity would have been verified. Suppl. aff. of Stouffer [dkt. # 21] ¶ 6, 12. And if the allegations of the complaint are to be believed, at least some of DiNatale's purposeful and directed contacts with Michigan were intended to fraudulently obtain a discount authorization, the effects of which were felt by GM in Michigan. Twenty-two contacts to the program office in Michigan cannot fairly be characterized as random,

attenuated, or fortuitous. Rather, these contacts make the defendant "subject to regulation and sanctions in the other State for the consequences of [his] activities." *Burger King*, 471 U.S. at 473.

The "arising from" prong is satisfied "when the operative facts of the controversy arise from the defendant's contacts with the state." *Calphalon*, 228 F.3d at 723. The Sixth Circuit has held that personal jurisdiction may exist over a non-resident defendant if the defendant "purposefully directs communications into the forum, and those communications form the 'heart' of the cause of action." *Neal*, 270 F.3d at 333. However, "'the locus of . . . a monetary injury is immaterial, as long as the obligation did not arise from a privilege the defendant exercised in the forum state.'" *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 151 (6th Cir. 1997) (quoting *LAK*, 885 F.2d at 1301). *But see Neogen*, 282 F.3d at 892 (determining that the plaintiff's allegations of economic harm from trademark infringement were sufficient to support a *prima facie* case for personal jurisdiction).

The court of appeals addressed the "arising from" component of the test in *Lanier v. American Board of Endodontics*, 843 F.2d 901, 908-09 (6th Cir. 1988). There, a female dentist sued the Illinois-based American Board of Endodontics in federal court in Michigan, alleging that she was denied a license by the Board on the basis of gender. The Board moved to dismiss, arguing that it had insufficient minimum contacts with the State of Michigan. The court of appeals disagreed, finding that the Board had transacted business within Michigan by exchanging correspondence and telephone calls with the plaintiff, and that the plaintiff's cause of action arose out of those business transactions. The court considered two possible theories defining the "arising from" requirement: whether the business transactions "made possible" the cause of action; and whether the cause of action arose in the "wake" of the business transactions. *Id.* at 909. Applying both theories, the court held that the discrimination was made possible and occurred in the wake of the plaintiff's filing of

her application, which constituted the transaction of business in Michigan by the Board. *Id.* at 908-09. The court found that the application process, evaluation, testing, and rejection were part of a "mosaic of activity," "every step of which was a constituent part of the whole." *Id.* at 908. The court reasoned that if the defendant discriminated against Dr. Lanier on account of her gender, it "must have done so, based at least in part, upon what it learned about her from its professional business contacts with her in Michigan during the very earliest stages of the application process." *Id.* at 909. Because those contacts made possible the rejection and concomitant discrimination, and the cause of action lay in the wake of them, the court found that the claims arose from the contacts with the forum.

The cause of action in this case arises from DiNatale's allegedly fraudulent procurement of GM vehicle discounts. The *only* way he could have done that under the program was to contact GM in Michigan for authorizations, either via phone or Internet. Transacting business with GM in this fashion "made possible" the cause of action. The cause of action also occurred in the wake of DiNatale's contacts, which accessed the vehicle discount program to obtain discount verification codes from GM in Michigan.

If the first two elements are met, an "inference of reasonableness arises . . . [and] only the unusual case will not meet this third criterion." *Theunissen*, 935 F.2d at 1461 (internal quotations and citations omitted); *see also Intera Corp.*, 428 F.3d at 618. In the Sixth Circuit, courts also determine the reasonableness of exercising personal jurisdiction over a defendant by weighing several factors, including "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy." *Intera Corp.*, 428 F.3d at 618. Regular business relationships with

a forum, and plans to continue those relationships, can support a finding of reasonableness. *See Neogen*, 282 F.3d at 892 ("[The defendant] anticipates from year to year that it will conduct a given level of sales in Michigan. . . . Although [the defendant's contracts with] individual customers do not represent "continuing relationships and obligations" with those particular customers, its predictable yearly business in Michigan does represent such a continuing relationship with the state overall.")

In this case, DiNatale argues that it would be inconvenient for him to adjudicate his claims in Michigan, 500 miles away from his home state of Maryland. That fact alone does not render unreasonable GM's prosecution of this lawsuit in Michigan. Certain discovery can be exchanged electronically without the need for the defendant to travel to Michigan for each case event, in the same manner as the challenged transactions were arranged. This case perhaps proves the point made by the Supreme Court in *Burger King*, which highlighted the "inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King*, 471 U.S. at 476. Michigan has a strong interest in protecting its primary industry and GM has a strong interest in vindicating its rights where its business is headquartered. Under these circumstances, the exercise of personal jurisdiction over DiNatale in Michigan would not offend traditional notions of fairness or substantial justice; it is reasonable.

The Court has personal jurisdiction over the defendant.

B.

DiNatale has moved in the alternative to transfer venue of the case to the United States District Court for the District of Maryland.  Although the purpose of the venue rules is to protect a defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial, *see LeRoy v. Great W. United Corp.*, 443 U.S. 173, 183-84 (1979), the proper venue for a civil action is governed by statute.  In civil cases "wherein jurisdiction is founded solely on diversity of citizenship," venue is proper in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a).  "Under § 1391(a)(2), . . . the appropriate forum for a case is any forum in which a substantial part of the events or omissions giving rise to the claim occurred." *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 264 (6th Cir. 1998).

Under 28 U.S.C. § 1404(a), a district court may transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice . . . to any other district or division where it might have been brought."  The burden is on the moving party to establish the need for a change of forum. *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978), *abrogated on other grounds by Pirone v. MacMillan, Inc.*, 894 F.2d 579 (2d Cir. 1990).  "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).  The Court must give "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotations and citations omitted).

Courts have broad discretion to transfer an action pursuant to section 1404 to avoid unnecessary delay and to protect parties, witnesses, and the public from undue expenses and inconvenience. *See generally Van Dusen v. Barrack*, 376 U.S. 612 (1964); *Norwood v. Kirkpatrick*, 349 U.S. 29 (1955). "[I]n ruling on a motion to transfer under § 1404(a), a district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citing *Stewart Org.*, 487 U.S. at 30). Although "a plaintiff's choice of forum should be given weight when deciding whether to grant a motion to change venue, this factor is not dispositive." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998) (internal citations omitted).

> This Court has identified the following factors as relevant for transfers under section 1404(a):
>
> (1) convenience of the parties and the witnesses, (2) accessibility of sources of proof, (3) the costs of securing testimony from witnesses, (4) practical problems associated with trying the case in the least expensive and most expeditious fashion, and (5) the interests of justice. . . . Other factors include (1) the relative congestion in the courts of the two forums, (2) the public's interest in having local controversies adjudicated locally, (3) the relative familiarity of the two courts with the applicable law, (4) the plaintiff's original choice of forum, and (5) whether the parties have agreed to a forum selection clause.

*Bennett v. Am. Online, Inc.*, 471 F. Supp. 2d 814, 820 (E.D. Mich. 2007) (citing *Viron Int'l Corp. v. David Boland, Inc.*, 237 F. Supp. 2d 812, 816 (W.D. Mich. 2002).

In the present case, the defendant resides in and is subject to personal jurisdiction in Maryland. Maryland, therefore, is a proper alternative venue. However, the events in this case took place in both states, with communications occurring by phone and the Internet. The case is not factually complex, thereby discounting problems of proof and the convenience of witnesses, since

documentary evidence equally available to both sides seems to tell the whole story: either the purchase discounts were for DiNatale's relatives and thus not fraudulent, or they were not. Neither side has identified witnesses who would testify at trial, so their convenience is not a factor that supports transfer of venue. Moreover, "because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity." *Burger King*, 471 U.S. at 474 (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)).

The Court does not believe that the pertinent factors favor transferring venue.

IV.

The Court finds that subject matter jurisdiction is proper based on diversity of citizenship under 28 U.S.C. § 1332, and the plaintiff has established personal jurisdiction over the defendant. Venue is proper in this district, and there is no good reason to transfer venue.

Accordingly, it is **ORDERED** that the plaintiff's motion to remand [dkt. # 8] is **DENIED**.

It is further **ORDERED** that the defendant's motion to dismiss for want of personal jurisdiction or alternatively to transfer venue [dkt. # 4] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 20, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 20, 2010.

                                           s/Teresa Scott-Feijoo
                                           TERESA SCOTT-FEIJOO